IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Hon. Robert E. Blackburn

Civil Action No.:     1:14-cv-189

**MICHAEL SCATA and JEANNIE SCATA**, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

**NATIONSTAR MORTGAGE LLC**, a Delaware limited liability company,

    Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**
**(Dkt. 11, filed March 17, 2014)**

## I.  INTRODUCTION

Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar") referred Plaintiffs Michael and Jeannie Scata ("Plaintiffs" or "the Scatas") and borrowers like them to foreclosure after expressly telling them that it wouldn't do so while their loan modification applications were under review. The Scatas have been trying to obtain a loan modification from Nationstar for nearly two years now. Nationstar has requested, and the Scatas have submitted, new sets of financial documents no fewer than 25 times since the Scatas first applied. Nationstar requests the same documents over and over again, claiming not to have received them, and sends denial letters based on borrowers' supposed failure to submit documents.

1

More alarmingly, Nationstar makes false promises to not foreclose on borrowers' loans while they are under review. That is, in an effort to keep them engaged in the loan modification process, Nationstar sends its borrowers form letters promising that it will not refer their loans to foreclosure either during the evaluation period or before specific deadlines expire for submitting supposedly necessary additionally documents. But before such time periods expire, and before Nationstar provides any answer on the borrowers' loan modification application, Nationstar refers its borrowers to foreclosure, forcing them to hire counsel or otherwise take action to protect their homes.

In their seven-count complaint, Plaintiffs allege claims for fraudulent misrepresentation, promissory estoppel, and violation of the federal Fair Debt Collection Practices Act ("FDCPA") and Colorado Fair Debt Collection Practices Act ("CFDCPA" or "the Act"). The first six counts—none of which Nationstar moves to dismiss—center on Nationstar's wrongful, fraudulent, and unlawful referral of loans to foreclosure. The sole count that Nationstar challenges is Count VII—failure to obtain a license in violation of the CFDCPA—because Nationstar asserts it falls under the Act's exemptions from the definition of "collection agency" reserved for servicers of mortgages more generally.

Nationstar's argument asks the Court, through a Rule 12(b)(6) motion to dismiss, to ignore the pleadings and decide factual issues without any discovery. As explained below, Plaintiffs allege Nationstar is a collection agency and therefore was required to obtain a license in Colorado. (Compl. ¶ 158.) Plaintiffs expressly allege—and the evidence will ultimately prove—that their loans were in default when they were transferred to Nationstar and that Nationstar regularly engages in the practice of

servicing troubled loans—meeting their burden at the pleading stage. (*See id.* ¶¶ 2, 3, 154.) To the extent Nationstar claims it falls under the CFDCPA's exemption to the definition of "collection agency" for loan servicers (even though the evidence strongly suggests it regularly serviced loans in default) it is required to do so via an affirmative defense upon which it will carry the burden.

This Court should deny Nationstar's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend their pleadings.

**II.    STATEMENT OF FACTS**

During May 2012, the Scatas realized that they needed help with their mortgage payments and reached out to their then-loan servicer Aurora Bank FSB ("Aurora"). (*Id.* ¶ 27.) At that time, they were nearly $9,000 behind on their loan. By June 2012, the Scatas had submitted their application for a loan modification under the federal Home Affordable Modification Program ("HAMP") and were to receive a response within about a 30-day period. (*Id.* ¶ 29.) Before Aurora could provide a decision on their application, however, the mortgage servicing rights ("MSRs") for the Scatas' loan were transferred to Nationstar. (*Id.* ¶ 30.) The Scatas received a letter indicating that Aurora would send the Scatas' HAMP application package to Nationstar and that Nationstar would pick-up where Aurora left off. (*Id.* ¶ 31.)

Instead, when Mr. Scata reached out to Nationstar, they informed him that he would need to submit a new application and start the whole process over. (*Id.* ¶ 33.) The Scatas promptly submitted a new application and then frequently contacted Nationstar during the month or so that followed to check on the status of their

application. (*Id.* ¶ 34.) At that time, Nationstar representatives assured Mr. Scata that their application was complete, that there was high volume, and that he likely would not hear anything for at least thirty (30) days. (*Id.*) In other words, they told him to sit tight and that he would not be foreclosed on during the review process.

***Nationstar requests, and re-requests, the same documents over-and-over again and the Scatas fully comply with each of Nationstar's requests.***

The Scatas first received a request for additional documents on September 6, 2012 requiring the Scatas to send in another copy of the signed IRS Form 4506-T and their 2011 Tax Returns. (*Id.* ¶ 36.) Then, on September 12, 2012, Nationstar again requested that the Scatas submit their 2011 Tax Returns, along with a Year-to-Date Profit and Loss, Statement of Association Dues, and Schedule K-1. (*Id.* ¶ 37.) The Scatas timely complied by sending the required documents. (*Id.* ¶ 38.) The Scatas then received another letter in early October (with which the Scatas again complied) requesting the exact same documents requested in the September 12, 2012 letter, followed by a letter in November saying the Scatas were being denied a modification due to supposed failure to send in documents. (*Id.* ¶¶ 39, 40.)

After speaking with a Nationstar representative in November 2012, Mr. Scata learned that their only option was to complete a whole new loan application, which the Scatas did immediately. (*Id.* ¶ 42.) However, when Mr. Scata followed up with Nationstar to confirm receipt, he was told that none of the materials had been received and that he would once again have to resend everything. (*Id.* ¶ 43.)

This pattern continued for months. The Scatas received a letter in November 2012 and December 2012, two letters in January 2013, a letter in April 2013, May 2013,

4

June 2013, and two letters in July 2013 requesting supposedly necessary "additional" documents that the Scatas had already sent in multiple times. (*Id.* ¶¶ 44, 45, 46, 48, 53, 54, 56, 59, 64, 66.) For example, both January letters, the April letter, the May letter, and both July letters requested a copy of their Year-to-Date Profit and Loss, which—prior to even receiving these requests—the Scatas had already sent to Nationstar at least four times. (*Id.* ¶ 47.) All told, Nationstar required that the Scatas resend their Profit and Loss to Nationstar at least nine (9) times, their IRS Form 4506T at least seven (7) times, their HOA documents at least eight (8) times, and, amazingly, to resend their tax returns or tax return extensions a jaw-dropping twelve (12) times. (*See, e.g., id.* ¶¶ 33, 36, 37, 39-41, 43-44, 55-56, 64, 66-67, 74, 76.)

In addition to the written correspondence, Mr. Scata would frequently speak with Nationstar representatives who would inform him that his documents had not been received, or that they had not been loaded into the system, and that he would have to resend everything. (*Id.* ¶¶ 41, 43, 49, 50.) For example, Mr. Scata spoke with a representative in November 28, 2012 who stated that the documents that Mr. Scata had both faxed and emailed on November 20, 2012 had never been loaded into Nationstar's system. (*Id.* ¶¶ 41, 43.) On February 6, 2013, Mr. Scata spoke with a representative who said his documents had been properly received, and about a week later another representative confirmed Nationstar had his documents. (*Id.* ¶ 49.) On February 22, 2013, a third representative informed Mr. Scata that the documents had never been submitted and that he would need to re-submit them by February 25, 2013. (*Id.* ¶ 50.)

All in all, Nationstar requested documents from the Scatas no fewer than <u>25</u> times during the course of <u>16</u> months. The Scatas fully and timely complied with each and every document request.

***Nationstar promises not to foreclose while the Scatas are being evaluated for a modification.***

During March 2013, Nationstar began sending the Scatas letters promising that it would not foreclose on the Scatas' loan while they were being evaluated for a loan modification. (*See id.* ¶¶ 52, 63.) The Scatas received two copies of the same form letter—dated March 24, 2013 and July 13, 2013—stating that (1) Nationstar had received their documentation for a HAMP modification, (2) the review process could take between 20-60 days, (3) Nationstar would provide the Scatas with a written notification of their decision, and (4) "during this evaluation period, [their] home will not be referred to foreclosure." (*Id.*)

During July 2013, Nationstar also began using a second form document, which combined a request for additional documents with a promise not to foreclose before the borrowers' deadline to submit the documents. (*Id.* ¶¶ 64, 66.) In these letters, Nationstar informed the Scatas that Nationstar was "missing the following **required** documents" and provided a deadline for the Scatas to submit the supposedly "missing" documents. The letters also promised that "during this evaluation period, [the Scatas'] home will not be referred to foreclosure." (*Id.*) The second such letter that the Scatas' received provided that they had until August 26, 2013 to submit additional documents.

In both instances, the Scatas had already submitted the documents that Nationstar requested many times over. For example, in its July 14th letter, Nationstar

requested the Scatas' 4506T Form and tax returns, which the Scatas had already submitted at least five (5) times and ten (10) times, respectively, since first applying for a loan modification. (*See id.* ¶ 64.) Likewise, in its July 27th letter, Nationstar requested that the Scatas submit a Profit and Loss—which they had already submitted at least seven (7) times, along with yet another copy of their tax returns. Regardless, the Scatas fully complied with Nationstar's requests by timely submitting the required documents.

***Nationstar refers the Scatas' loan to foreclosure before providing any decision on their modification application and before their deadline to submit documents.***

On August 22, 2013, the law firm of Medved Dale Decker & Deere, LLC ("Medved") sent the Scatas a letter informing them that Nationstar had referred their loan to foreclosure. (*Id.* ¶ 69.) This of course conflicted with Nationstar's promise not to foreclose while the Scatas were being evaluated for a loan modification or before the August 26th deadline to submit additional documents. (*Id.* ¶¶ 63, 66.) The Scatas retained legal counsel to defend them in the non-judicial Colorado foreclosure proceedings. In response to the Rule 120 Notice, the Scatas Answered through their attorneys by describing Nationstar's corrupt and fraudulent servicing practices. (*Id.* ¶ 75.) In the face of the Scatas' Answer, Medved withdrew its Rule 120 Motion in October 2013. (*Id.* ¶ 77.)

During the course of the foreclosure proceedings, Nationstar continued to request additional documents from the Scatas, promising not to foreclose during the evaluation period. Specifically, Nationstar sent the Scatas a copy of the second form letter in August 2013, September 2013, October 2013, and November 2013 promising not to foreclose "during [the] evaluation period." (*Id.* ¶¶ 72, 74, 76, 79.) Again, these

7

letters requested documents that the Scatas had already submitted many times, such as their RMA Affidavit, HOA documents, tax returns, and W2s and Schedule 1120s. On December 4, 2013, less than two months after withdrawing its Rule 120 Motion and despite the Scatas' continued compliance with Nationstar's requests for additional documents, Nationstar once again referred the Scatas' loan to foreclosure. (*Id.* ¶ 81.)

On January 22, 2014, the Scatas filed a seven-count putative class action Complaint alleging claims for fraudulent and unlawful business practices. It has been nearly two years since the Scatas first applied for a loan modification. To date, Nationstar has not provided the Scatas with a response on their application. Its conduct is blatantly fraudulent and must be remedied without delay.

### III.   THIS COURT SHOULD DENY NATIONSTAR'S MOTION TO DISMISS PLAINTIFFS' CLAIM UNDER THE CFDCPA.

"In construing the motion to dismiss, the court must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Arthur v. Liberty Mut. Fire Ins. Co.*, No. 05CV00680, 2005 WL 3078842 (D. Colo. Nov. 16, 2005) (quotations omitted.) While federal pleading standards require more than "formulaic recitation of the elements," a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Federal Rules recognize that affirmative defenses should be pled in a response, rather than in a Federal Rule 12(b)(6) motion to dismiss. *Corum Real Estate Grp., Inc. v. Blackrock Realty Advisors, Inc.*, No. 09CV01680, 2010 WL 1957226 (D. Colo. May 14, 2010) (citing Fed. R. Civ. P. 8(c)(1)). Courts may dismiss an action pursuant to a Rule 12(b)(6)

motion on the basis of an affirmative defense only when it is "clear" from the face of the complaint that dismissal is proper. *See Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 900 F. Supp. 2d 1222, 1244 (D. Kan. 2012) *motion to certify appeal granted,* No. 11-2340, 2012 WL 4210500 (D. Kan. Sept. 19, 2012) and *aff'd sub nom. Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246 (10th Cir. 2013).

Nationstar's Motion to Dismiss argues that Plaintiffs failed to state a claim under the CFDCPA because supposedly Nationstar falls within one of the Act's exemptions to the definition of "collection agency," which applies to businesses whose "principal business is the making or servicing of debt not in default" where the debt is secured by real property. (Def. Mot. 3-7) (citing Col. Rev. Stat. § 12-14-103(2)(VIII)). As explained below, Nationstar is incorrect. Plaintiffs have properly alleged Nationstar falls within the CFDCPA's definition of "collection agency." Plaintiffs are not required to negate all possible statutory exceptions to "collection agency" in their pleading—rather, such exceptions must be alleged and proven by Nationstar as an affirmative defense. Further, Nationstar's motion improperly seeks to adjudicate questions of fact regarding whether Nationstar's "principal business" is the "servicing of debt **not in default**"— especially since Plaintiffs allege that Nationstar is in the business of servicing loans that are in default (*see* Compl. ¶¶ 2, 3) and that the Scatas were in default when Nationstar acquired the servicing rights to their and the putative class members' loans.

  **A.**  **Nationstar Is A "Collection Agency" Because, As A Loan Servicer, It Regularly Collects Or Attempts To Collect Debts Owed To Another.**

Plaintiffs allege Nationstar violated C.R.S.A. § 12-14-115 as a collection agency that failed to obtain a Colorado license. (Compl. ¶¶ 152-161.) The CFDCPA requires

that any person conducting the business of a "collection agency" in the State of Colorado must obtain a "license under this article." C.R.S.A. § 12-14-115. The term "collection agency" includes any: "(I) Person who engages in a business the principal purpose of which is the collection of debts; or (II) Person who: (A) Regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . ." C.R.S.A. § 12-14-103(2)(a).

Plaintiffs allege that Nationstar is a "collection agency" because in its role as the loan servicer Nationstar collects, or attempts to collect, debts on behalf of the loan investor. (*See* Compl. ¶¶ 11, 15, 158.) As a collection agency, Nationstar was required (but failed) to obtain a license in Colorado and therefore violated C.R.S.A. § 12-14-115. Notably, while Nationstar claims it falls under the exemption to the term "collection agency" for servicers of mortgage loans, it **does not** dispute that it engages in collection activities on behalf of a third party or that it otherwise doesn't meet the plain definition of a "collection agency."

The Scatas squarely allege that their loan and the putative class members' loans were in default when the MSRs were transferred to Nationstar. (Compl. ¶¶ 137, 158.) This is critical. It is well settled that[1] Colorado courts are to look to cases interpreting the FDCPA for guidance on how to interpret the CFDCPA. See *Udis*, 56 P.3d at 1179 (citing *Furlong v. Gardner,* 956 P.2d 545 (Colo.1998)) ("When analyzing a state statute, interpretation of an analogous federal statute is persuasive.").

---

[1] The CFDCPA is "patterned on the FDCPA" and that the Acts contain "nearly identical" language except the FDCPA uses the term "debt collector" whereas the CFDCPA uses the term "collection agency." *Udis v. Universal Commc'ns Co.*, 56 P.3d 1177, 1179 (Colo. Ct. App. 2002); (*see* Compl. ¶ 156.)

Courts interpreting the FDCPA recognize that Loan Servicers are "debt collectors," provided the borrowers' loans are in default when the MSRs are transferred to the loan servicer. *See Garrett v. BNC Mortgage, Inc.*, 929 F. Supp. 2d 1120, 1125-26 (D. Colo. 2013) (citing *Solomon v. HSBC Mortg. Corp.,* 395 Fed. Appx. 494, 495 (10th Cir. 2010)) (noting that "because the complaint alleges that Wells Fargo acted only as a loan servicer in this case, and does not allege that Wells Fargo acquired servicing rights after default, plaintiffs do not state a claim against Wells Fargo under the FDCPA or the CFDCPA"). Put simply, consistent with the FDCPA's definition of "debt collector," Plaintiffs allege Nationstar falls within the CFDCPA's definition of "collection agency" because Plaintiffs' and the putative Class Members' loans were in default when the MSRs were transferred to Nationstar and that Nationstar regularly services defaulted and troubled loans. (*See* Compl. ¶¶ 2, 3, 137, 146-48)

Again, Nationstar does not contest that it falls within the plain definition of "collection agency" or that Plaintiffs' and the putative Class Members' loans were in default when the MSRs were transferred to Nationstar. Rather, and as explained below, Nationstar claims it qualifies for the CFDCPA's exemption for loan servicers who service loans that are current—as opposed to in default such that a debt obligation has been created—and asks the Court to accept these assertions as true without the benefit of any discovery.

### B. Nationstar Has Not Met Its Burden Of Showing It Falls Within One Of The Act's Exemptions To The Definition Of "Collection Agency."

Glossing over the actual requirements of its claimed exception, Nationstar argues it is not a "collection agency" under the CFDCPA because "Nationstar's primary

11

business is servicing loans secured by real property." (Def. Mot. 5.) Nationstar ignores the exception's actual requirements. Section 12-14-103(2)(b) sets forth eight exceptions to the definition of "collection agency," including one for: "Any person whose principal business is the making or servicing of debt **not in default** and who acts as a loan correspondent, or seller and servicer for the owner, or holder of a debt which is secured by a deed of trust on real property . . . ." See § 12-14-103(2)(b)(VIII) (emphasis added).

Because § 12-14-103(2)(b) describes exemptions to the definition of "collection agency," Nationstar may only claim that it falls within one of the exemptions as part of an affirmative defense for which Nationstar bears the burden of proof. *See United States v. Basnett*, 735 F.3d 1255 (10th Cir. 2013) (finding that an exemption (built into the statutory definition) "involves an affirmative defense rather than an element of the government's prima facie case" and therefore the defendant had the burden of proving that the exemption applies."); *see also Lederman v. Frontier Fire Prot'n,* 685 F.3d 1151, 1158 (10th Cir. 2012) (finding that "'entitlement to an exemption is an affirmative defense'"); *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993) (noting "[t]he private offering exemption is an affirmative defense that must be proved by the person claiming the exemption"); *O'Neill v. California Farms, Inc.*, No. 12-CV-00676, 2013 WL 5467074 (D. Colo. Sept. 30, 2013) (finding defendant bears the burden "to show that a[n] exemption from registration" under the CSA applies).

Here, as in the above authorities, Nationstar argues that an exemption to the statutory definition applies. *Basnett*, 735 F.3d at 1257. It thus carries the burden of proof of showing that its principal business is the making or servicing of debt **not in default.**

Nationstar fails to meet its burden. In its Motion to Dismiss, Nationstar merely contends, without more, that its "primary business is servicing loans secured by real property." (Def. Mot. 5.) Nationstar does not argue, and critically presents no evidence, that its primary business is servicing loans "not in default," which is a key component of the exemption Nationstar claims to fall under. *See* § 12-14-103(2)(b)(VIII) (exempting "[a]ny person whose principal business is the making or servicing of debt **not in default**") (emphasis added). Indeed, the only reference that Nationstar makes regarding its servicing of loans not in default is on Page 6 of its Motion to Dismiss wherein Nationstar theorizes, without support, that "[a] servicer's 'principal business' may be the servicing of loans 'not in default' even if it less frequently services loan that are in default." (Def. Mot. 6.) Nationstar fails to state—let alone provide proof—that it services loans that are not in default more frequently than loans that are in default or that its "principal business" is servicing loans not in default. (*Id.*)

By contrast, the Scatas expressly allege both that they and the putative class members' loans were in default when they were transferred to Nationstar and that "[m]any of [Nationstar's] portfolios are viewed as being 'high risk' or having special servicing needs," (Compl. ¶¶ 2, 3)[2]—which must be taken as true on a Rule 12(b)(6)

---

[2] Nationstar cites *Schwartz v. Bank of Am., N.A.*, No. 10-CV-01225, 2011 WL 1135001 (D. Colo. Mar. 28, 2011) in support of its claim that Nationstar is exempted from the definition of "collection agency." However, in *Schwartz*, the plaintiff failed to allege that defendants engaged in the practice of servicing loans that are in default and in that case the MSRs from Schartz's loan had not been transferred from another loan servicer to Nationstar. (*See Schwartz*, Dkt. 1-1.) Moreover, Schwartz merely argued that defendants were not the owners or holders of the debt at issue, completely ignoring that the exclusion applies to loan servicers. (*See Schwartz*, Dkt. 50, at 5-6.) Schwartz also

motion. *See Nat'l Credit*, 900 F. Supp. 2d at 1244 (dismissal pursuant to Rule 12(b)(6) motion on the basis of an affirmative defense allowable only when it is "clear" from the face of the complaint that dismissal is proper).

  **C.** **Nationstar's Claim That It Falls Under An Exemption To The Definition of "Collection Agency" Presents A Question Of Fact On Which Plaintiffs Need Discovery.**

  Even if this Court were to find that Nationstar's attempt to place itself within the exemption is not an affirmative defense, Plaintiffs should be allowed discovery with respect to the factual issues presented in the motion. *Wildearth Guardians v. Pub. Serv. Co. of Colorado*, No. 09-CV-01862, 2010 WL 1568574 (D. Colo. Apr. 15, 2010) ("question of fact not suited for the limited scope of review in a motion to dismiss"). Nationstar asks the Court to simply accept on faith its assertion that Nationstar's "principal business" is the servicing of loans "not in default"—which presents a question of fact regarding whether Nationstar principally engaged in the business of servicing loans that are in default versus loans that are not in default. Therefore, at a minimum, Plaintiffs need discovery into the composition of the loans serviced by Nationstar— which is exclusively within Nationstar's control—to determine whether the "collection agency" exemption possibly applies.

---

failed to allege that defendants' principal purpose is the collection of debts or that they regularly attempt to collect debts, or that they otherwise fall under the definition of "collection agency." Here, by contrast, Plaintiffs allege that Nationstar falls under the definition of "collection agency" and the plain language in the Scatas' Complaint raises serious question as to whether Nationstar's "principal business" is the servicing of loans not in default.

Accordingly, this Court should find that Nationstar's Motion to Dismiss raises a question of law not properly decided in a motion to dismiss.

## IV.     CONCLUSION

Plaintiffs pled that Nationstar falls within the plain definition of "collection agency" and therefore was required to obtain a license under the CFDCPA. Whether Nationstar falls within one of the statutory exclusions to "collection agency" contemplates an affirmative defense and raises a question of fact that is not properly tested in a motion to dismiss. This Court should deny Nationstar's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend their pleadings.

Dated: April 7, 2014                             Respectfully submitted,


                                        /s/ Steven L. Woodrow
                            One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Steven L. Woodrow
swoodrow@edelson.com
Megan L. Lindsey
mlindsey@edelson.com
EDELSON PC
999 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4877
Fax: 312.589.6378

*Attorneys for Plaintiffs and the Putative Class*

15

**CERTIFICATE OF SERVICE**

I, Steven L. Woodrow, an attorney, hereby certify that on April 7, 2014, I served the above and foregoing *Plaintiffs' Response in Opposition to Motion to Dismiss (Dkt. 11, filed March 17, 2014)* by causing a true and accurate copy of such paper to be filed with the Clerk of the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                           /s/   Steven L. Woodrow