**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Hon. Robert E. Blackburn**

Civil Action No.:     1:14-cv-189-REB-KLM

**MICHAEL SCATA and JEANNIE SCATA**, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

**NATIONSTAR MORTGAGE LLC**, a Delaware limited liability company,

    Defendant.

---

**PLAINTIFFS' SECOND MOTION TO EXTEND DEADLINES FOR THE
PARTIES TO FILE PAPERS RELATED TO CLASS CERTIFICATION
AND RELATED DEADLINES**

---

## I.      INTRODUCTION

Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar") referred Plaintiffs Michael and Jeannie Scata ("Plaintiffs") and borrowers like them to foreclosure after expressly telling them in form letters that it would not do so while their loan modification applications were under review. Plaintiffs bring this motion to request that the Court extend certain deadlines in the scheduling order to allow time for Plaintiffs to complete discovery with regard to ESI, sampling, and the outstanding Medved subpoena. Additional time will also allow Ms. Scata to locate a new class representative in light of Nationstar's objections to Mr. Scata's motion to abandon the claims at issue in this case filed in his bankruptcy case.

In accordance with Federal Rule Civil Procedure 16(b), Local Rule 16.1, and Local Rule 6.1, Plaintiffs respectfully request that the Court enlarge Plaintiffs' deadline to move for class certification and the corresponding briefing deadlines by 60 days. Plaintiffs have conferred with Nationstar and Nationstar has indicated that it opposes any such extension.

As explained below, Plaintiffs need additional time due to circumstances beyond their control and despite their diligent efforts pursuing this case. Plaintiffs have served written discovery, submitted multiple discovery dispute charts identifying more than thirty (30) issues to the Court, deposed Nationstar's two Rule 30(b)(6) witnesses, met and conferred at length regarding the production of samples and ESI, retained expert witnesses to analyze and sort data, and retained an expert to opine with respect to the sample size needed. As a result, this Court should grant the requested extension.

## II. ARGUMENT

Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent." Similarly, Local Rule 16.1 provides a scheduling order shall only be modified "upon a showing of good cause and by leave of court." "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (quoting *Colorado Visionary Acad. V. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) (quotation omitted)).

As explained below, this Court should grant Plaintiffs' motion to amend the scheduling order to allow additional time for Plaintiffs to move for class certification because:

- Now that Nationstar and Mr. Scata's bankruptcy Trustee have objected to Mr. Scata's Motion to Abandon, Plaintiffs need discovery regarding the identities of class members so that they may find a replacement for Mr. Scata (and though plaintiffs have issued such discovery, Nationstar refuses to agree to answer it on an expedited basis);
- Nationstar has not yet produced sample loan files and data necessary for Plaintiffs to model class damages;
- Nationstar has recently indicated that the production of ESI is still 2-3 weeks away; and
- Medved's Motion to Quash Subpoena remains outstanding.

In light of these outstanding issues, this Court should grant the requested modification and enlargement of the scheduling deadlines.

> **A. Nationstar and Mr. Scata's bankruptcy Trustee recently objected to Mr. Scata's Motion to Abandon Claim, and Plaintiffs need discovery regarding the identities of class members so that they may find a replacement for Mr. Scata.**

The first reason that good cause exists to enlarge the deadlines for class certification is because—given Nationstar and the Trustee's decision to oppose abandoning the claim and their announced intentions to settle—Mr. Scata is no longer able to serve as an adequate class representative. As such, Plaintiffs issued discovery so that they may locate new proposed representatives from the data Nationstar has already provided of loans that were prematurely referred to foreclosure like the Scatas were and asked Nationstar if it would provide expedited responses. Nationstar has refused. As explained below, Plaintiffs need such discovery prior to moving for class certification.

> **1. On January 30, 2015, both Nationstar and the US Trustee objected to Mr. Scata's Motion to Abandon.**

Both Nationstar and the U.S. Trustee overseeing Mr. Scata's bankruptcy filing have recently objected to Mr. Scata's Motion to Abandon the class action claims being pursued in this litigation. (*See* Objections to Abandonment, true and accurate copies of which are attached as Group Ex. A.) After being notified of the objection, Plaintiffs' counsel asked the Trustee, Joseph Rosania, whether he intended on intervening in the litigation and continuing on with the lawsuit. On February 17, 2015 Mr. Rosania responded:

4

>My understanding is that I am going to settle the bankruptcy estate's claims for a cash settlement upon notice to creditors and bankruptcy court approval so I guess the defendant does not think the damages are "insubstantial."
>
>I do not intend on substituting or pursuing the civil action and believe I will have a signed agreement with the defendant before March 2, 2015.

(*See* "Rosania Email," a true and accurate copy of which is attached as Ex. B.)[1] As Mr. Rosania anticipates settling prior to the class certification briefing deadline, it is clear that Mr. Scata cannot continue as a class representative.

To be sure, that does not leave the matter deprived of a live case or controversy. *Cf. Reed v. Bowen*, 849 F.2d 1307, 1314 (10th Cir. 1988) ("No court has held, in a factual context similar to this case, that counsel has a *right* to use the power of the courts, through the Rules of Civil Procedure, to find a client who could be intervened as

---

[1] While the Trustee is the real party in interest, it is admittedly rare for Trustees to insert themselves as named plaintiffs in putative class actions. As Judge Posner explained in *Dechert v. Cadle Co.*:

>In *Morlan v. Universal Guaranty Life Ins. Co.,* 298 F.3d 609, 619 (7th Cir.2002), we noted the infrequency of class actions in which a trustee in bankruptcy is the named plaintiff: "What trustee in bankruptcy would think it worthwhile to insert himself in the place of the named plaintiff? We are not surprised to find very few cases in which trustees in bankruptcy have done so. The named plaintiff in a class action usually has only a small stake in the action, and while the stakes for the class as a whole may be large, very few of the benefits of settling the class action or prosecuting it to judgment would be received by the trustee (which is to say the creditors), since he would just be the named plaintiff's surrogate. ***Most of the benefits would go to the other members of the class and to the lawyers for the class, so that the trustee, as class representative yet having fiduciary obligations exclusively to the estate in bankruptcy, would have a potential conflict of interest*** " (citations omitted).

333 F.3d 801, 802 (7th Cir. 2003) (Emphasis added).

5

a plaintiff in a suit which has no party plaintiff.") (Emphasis in original). Rather, Ms. Scata remains as a named plaintiff—the house securing the loan at issue is in her name only, she is on the loan about which a modification was sought, and she has not filed for bankruptcy protection.[2] However, Ms. Scata suffered a heart attack after the litigation was filed and has been slowly recovering. Given such limitations, an additional class representative should be added.

As Nationstar has explained to the Court in past hearings, it has already produced data (in the form of Excel spreadsheets) that contain the loan numbers of borrowers who, like the Scatas, were prematurely referred to foreclosure. That is, Nationstar has identified borrowers, by loan number, who received either or both of the form letters at issue in this case and, despite the time periods set forth in the letters, were referred to foreclosure before such time had expired. Nationstar has even produced data showing which of these borrowers, like the Scatas, were prematurely charged attorneys' fees for Nationstar's foreclosure lawyers. In short, from this data, Plaintiffs are able to determine, by loan number, whether borrowers were referred to foreclosure before they should have been and whether they suffered similar injuries as the Scatas.

Because the data only includes the borrowers' loan numbers, on February 5 2015 Plaintiff asked Nationstar asking for the names and contact information of the

---

[2] On or around December 4, 2014, the Plaintiffs entered into a stipulation agreeing that, because Ms. Scata did not have the physical capacity to undergo a deposition, they would not offer testimony from her unless they first produced her for a deposition. On February 19, 2015, Plaintiff's counsel confirmed that Ms. Scata is still not physically able to sit for a deposition.

borrowers whose loan data has already been produced. Nationstar responded that such information had not previously been requested. On February 7, 2015, Plaintiff served requests for production asking for the names and contact information for the borrowers whose data had already been produced. Counsel thereafter met and conferred by telephone on February 10, 2015, during which time counsel for Nationstar indicated that Nationstar would not agree to answer the discovery within 15 days as opposed to the customary 30 days.

Because, as explained below, such discovery is needed so that Plaintiffs can identify new class representatives, Nationstar's refusal to provide such information on an expedited basis warrants an enlargement of the current certification deadlines.

> **2. As a result of the Trustee's and Nationstar's objections to the Motion to Abandon, Plaintiffs have issued discovery to locate a replacement representative from the loan data that Nationstar has already produced.**

When events render a proposed class representative unable to serve, the court may allow for the substitution of a new representative. *In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2009 WL 3122501, at *2 (D. Kan. Sept. 24, 2009) ("[T]he court recognizes that the need to substitute new plaintiffs as class representatives does not frequently arise at convenient times, such as prior to the deadlines contemplated in Rules 15 and 16. Courts in the Tenth Circuit have therefore taken a rather liberal approach in permitting the substitution of class representatives at various stages in the proceedings."); *see also In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D.Kan.1995) ("If it later becomes apparent that certain types of purchasers are not adequately represented by the named representatives, the Court

7

may require substitution or addition of a class representative...."); *see also Phillips v. Ford Motor Co.,* 435 F.3d 785, 787 (7th Cir.2006) ("[C]ourts ... disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs."); *In re Nat'l Australia Bank Sec. Litig.,* No. 03 CIV.6537 BSJ, 2006 WL 3844463, at *3 (S.D.N.Y. Nov.8, 2006) ("Defendants' claim that final dismissal is required on the ground that there is no live action into which a new plaintiff may be substituted or intervene, is belied by the great weight of authority.... These cases demonstrate that courts not only may, but *should,* respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative." (citations omitted) *Dozier v. Haveman*, No. 2:14-CV-12455, 2014 WL 5483008, at *13 (E.D. Mich. Oct. 29, 2014).

In certain cases, precertification discovery may be allowed to locate additional or replacement representatives.[3] The Tenth Circuit examined whether courts may allow such discovery in *Reed v. Bowen*, 849 F.2d 1307, 1314 (10th Cir. 1988). In finding that the district court did not abuse its discretion in denying the plaintiff's request for such discovery, the Court focused on the "long period of time within which counsel for the

---

[3] *Pirjada v. Superior Court*, 201 Cal. App. 4th 1074, 1088, 134 Cal. Rptr. 3d 74, 84 (2011) ("precertification discovery may be allowed in appropriate circumstances to identify a substitute class representative in place of one who is not able to serve in that capacity…."); *see also CashCall, Inc. v. Superior Court*, 159 Cal. App. 4th 273, 284, 71 Cal. Rptr. 3d 441, 449 (2008); *Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772, 779, 40 Cal.Rptr.3d 575 ("Because a named plaintiff may not adequately represent the class and may need to amend the complaint to add a new individual plaintiff who will adequately represent the class, precertification "[d]iscovery to ascertain a suitable class representative is proper.")

named plaintiffs could have located" a replacement representative but had chosen not to. As the *Reed* court explained:

> Nor is any unfairness involved. We emphasize again the long period of time within which counsel for the named plaintiffs could have located a party with an appropriate claim, who was willing to become a plaintiff in this suit, or within which such a potential intervenor could have become known in some other fashion. Fed.R.Civ.P. 23(c)(1) requires that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." The mandate reversing the initial district court's dismissal was entered in the district court on July 16, 1985. That opinion was filed by this court on March 6, 1985. We indicated to counsel in that opinion that intervention might be required by the district court. The SSA in its statement of position filed on August 29, 1985 provided counsel with notice that it would challenge the adequacy of the named plaintiffs' representation. On October 15, 1985 defendants filed a motion to dismiss based on the inadequacy of class representation. On January 9, 1986, in the absence of any intervention, the district court granted the SSA's motion for denial of class certification and dismissal. ***Given the time which elapsed between the entry of the remand order and the denial of certification, and the warning counsel had of the desirability of intervention, the district court did not abuse its discretion in denying class certification without allowing counsel further discovery to identify purported class members.***

849 F.2d at 1314 (Emphasis added).

Unlike the situation in *Reed*, Plaintiffs have not delayed here in any sense. The Trustee, which had previously expressed no interest in the litigation, decided on January 30, 2015 to object to Mr. Scata's Motion to Abandon. Supplemental discovery was issued a week later, and counsel for the Parties promptly met and conferred. As such, there is no "long period of time within which counsel for the named plaintiff could have located a parties with an appropriate claim who was willing to become a plaintiff in the suit."

9

Further distinguishing the instant situation from the facts of *Reed* is that, in *Reed*, Plaintiff was attempting "to find a client who could be intervened as a plaintiff in a suit which has no party plaintiff," something the court found to be without precedent. That is dissimilar from the case at bar given that Ms. Scata remains a named plaintiff in the case. Because Plaintiff isn't searching for a new plaintiff to ensure that a live case or controversy exists but rather is looking for adequate class representatives in a case with a live controversy, *Reed* does not require that the Court here deny the discovery sought, either in general or on the expedite schedule that Plaintiffs have requested.

As such, Plaintiffs respectfully request that the Court Order Nationstar to respond to the discovery on an expedited basis and further find that the need for such remaining discovery constitutes good cause for enlarging the scheduling order deadlines.

**B.    Nationstar has not yet produced sample loan files and data necessary for Plaintiffs to model class damages, and Plaintiffs have filed a discovery dispute chart supported by expert testimony.**

Plaintiffs also have shown good cause to amend the scheduling order because, despite their best efforts, Plaintiffs have not yet been able to obtain the sample loan files that Plaintiffs' expert will need to model class damages. As set forth in Plaintiff's prior Motion to Enlarge deadlines (Dkt. 39.) Plaintiffs requested sampling via Request for Production Nos. 16 and 17. Counsel for the parties met and conferred regarding sampling at least seven times. Plaintiff submitted a discovery dispute chart explaining the two central issues: the size of the two samples and whether the sampled files should include borrower documents.

On January 8, 2015 the Court held a telephonic conference regarding sampling. Plaintiffs' counsel explained that Plaintiffs needed at least 100 sample files from each of the two populations to be sampled (for a total of 200 files) in order to obtain statistically relevant results. For its part, Nationstar would only agree to produce 50 sample files for each population, for a total of 100 files. During the conference, the Court asked Plaintiff's counsel for support for the need for 100 files for each group that is to be sampled, and Plaintiff's counsel responded by referring the Court to the website http://www.surveysystem.com/sscalc.htm, a sample size calculator that determines sample sizes needed to obtain results within certain confidence levels and intervals. The Court (understandably) explained that it couldn't simply accept a referral to a website. The Court denied the request for 100 sample files and indicated that the parties should meet and confer because defense counsel indicated that it had not had an opportunity to review the website. The Court also asked Plaintiff's counsel if expert testimony was available, and Plaintiff's counsel responded that it would be. The Court indicated that during the meet and confer if the defendant didn't accept the website evidence that Plaintiff should present the expert testimony.

The same day as the teleconference, January 8, 2015, Plaintiff's counsel forwarded to Nationstar's counsel the URL for http://www.surveysystem.com/sscalc.htm and asked whether the website evidence would be sufficient to determine appropriate sample sizes. (*See* "Jan. 8, 2015 Email to E. Kemp," a true and accurate copy of which is attached as Ex. C.) On January 20, 2015 Nationstar's counsel responded that it

11

believed that expert testimony was required. (*See* "Jan. 20, 2015, Kemp Email," a true and accurate copy of which is attached as Ex. D.)

On February 11, 2015, Plaintiff's counsel sent to Green Tree a copy of the report of Plaintiff's expert, Don Frankenfeld, a Harvard trained mathematician and expert economist. (*See* "Feb. 11, 2015 Email to E. Kemp" and Frankenfeld Report, true and accurate copies of which are attached as Group Ex. E.) Mr. Frankenfeld's report explained that given the sizes of the populations to be sampled, samples of 100 files for each sample would be the minimum needed so that any information extrapolated would have meaning from a statistical standpoint. (Frankenfeld Report, Ex. E-2.) Mr. Kemp responded that he would follow up "shortly under separate cover." (*See* "Feb. 11, 2015 Kemp Email, a true and accurate copy of which is attached as Ex. F.)

As of February 18, 2015, and having received no response from Nationstar with respect to sampling, Plaintiff filed a discovery dispute chart attaching Mr. Frankenfeld's report.[4] On February 19, 2015, the Court set a hearing on the discovery dispute for February 24, 2015. (Dkt. 49.) Because, this dispute remains pending, good cause exists to extend the current certification briefing and hearing deadlines.

    **C.**    **Nationstar has recently indicated that the production of ESI is still 2-3 weeks away**.

For several months, the Parties had been discussing the production of ESI. On September 5, 2014, Nationstar suggested that Plaintiff propose ESI search terms.

---

[4] Plaintiff simply could not afford, in light of the presently pending class certification deadline of March 2, 2015 and Nationstar's refusal to answer discovery on an expedited basis, to wait any longer.

Plaintiff did so on October 13, 2014. Nationstar claims that it thereafter provided counter-terms on November 24, 2014 and December 3, 2014.

Plaintiff reviewed the terms and the parties met and conferred in January 2015. During the meet and confer, Plaintiffs' counsel explained that Plaintiffs would accept Nationstar's terms. Rather than acknowledge an agreement, defense counsel indicated that engaging in ESI would "annoy" Nationstar and that he needed to confer with his client. Receiving no response, Plaintiff's counsel sent Nationstar's counsel an email on February 11, 2015 asking about the ESI terms that Nationstar had already proposed. (*See* "Feb. 11, 2015 Email to E. Kemp, Ex. E-1.) On February 12, 2015 Nationstar's counsel responded that it would take "2-3 weeks" to produce the documents. (*See* "Feb. 12, 2015 Email from A. Givental, a true and accurate copy of which is attached as Ex. G.)

The practical result is that Plaintiffs could receive the ESI just days before the presently pending March 2, 2015 class certification briefing deadline. Accordingly, good cause exists on these grounds to enlarge those deadlines by sixty (60) more days.

### E. Plaintiffs' Proposed New Schedule

Given the current deadlines and the discovery that remains outstanding, Plaintiffs seek a sixty (60) day enlargement of the deadlines that were set forth in the Court's Order of January 8, 2015 as follows:

|  | Current Deadline | Proposed Deadline |
|---|---|---|
| Deadline to Move for Class Certification | March 2, 2015 | May 1, 2015 |
| Affirmative Expert Disclosure Deadline | April 1, 2015 | June 1, 2015 |
| Rebuttal Expert Disclosure Deadline | May 1, 2015 | June 30, 2015 |

| Discovery Deadline | April 15, 2015 | June 15, 2015 |
| --- | --- | --- |
| Discovery Deadline re Expert Witnesses | June 1, 2015 | July 31, 2015 |
| Dispositive Motions Deadline | May 15, 2015 | July 13, 2015 |
| Trial Prep Conference | Oct. 16, 2015 | Oct. 16, 2015 |
| 10-Day Jury Trial | Nov. 2, 2015 | Nov. 2, 2015 |

WHEREFORE, the Plaintiffs respectfully request that the Court Order Nationstar to answer Plaintiffs' discovery seeking the identities of potential class members on an expedited basis, enlarge the deadlines related to briefing on class certification as set forth herein, and award such additional relief as the Court deems necessary and just.

Dated: February 19, 2015            Respectfully submitted,

                                      /s/ Steven L. Woodrow
                                     One of Plaintiffs' Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Tel: 303.357.4877
Fax: 303.927.0809

*Attorneys for Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

I, Steven L. Woodrow, an attorney, hereby certify that on February 19, 2015, I served the above and foregoing ***Plaintiffs' Second Motion to Extend Deadlines for the Parties to File Papers Related to Class Certification and Related Deadlines*** by causing a true and accurate copy of such paper to be filed with the Clerk of the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                                                  /s/   Steven L. Woodrow